# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Meatball Management LLC, | |
| Plaintiff | |
| v. | Case No.1-18-cv-4447 |
| OTG Experience LLC, | |
| Defendant | Jury Trial Demanded |

_____

## COMPLAINT

Plaintiff Meatball Management LLC ("Plaintiff") hereby alleges against Defendant OTG Experience LLC (OTG") as follows:

## PARTIES

1.  Plaintiff is a Delaware LLC, with its corporate office at 108 East 16${}^{th}$ Street, New York, NY 10003.

2.  On information and belief, Defendant OTG is a corporation, with its headquarters at 352 Park Avenue South, New York, New York 10010.

1

## JURISDICTION AND VENUE

3.      This action is brought under The Lanham Act, 15 USC §1121, 15 USC §1114 for trademark infringement and 1125(a) et seq. for unfair competition and false advertising, 28 USC §1331(federal question jurisdiction), 28 USC § (a) (any Act of Congress relating to trademarks, 28USC §1367(supplemental jurisdiction) and 28 USC §§ 2201-2202 for a declaration of rights in Plaintiff's well established federally registered trademarks THE MEATBALL SHOP on The Principal Register (Reg. No.: 4895393, 5058440, and 5058611, and append as Exhibits) and under New York common law. OTG has taken the position that such registrations are invalid and that they intend to infringe such mark with the opening of at least one new restaurant, presently called the MAGNOLIA MEATBALL SHOP at the George Bush International Airport in Houston, Texas (EX #1, the press release by OTG, and EX #2, a photograph of the MAGNOLIA MEATBALL SHOP restaurant).  Plaintiff has warned OTG that such acts will constitute willful trademark infringement and other violations of the Lanham Act and New York common law but such warnings have been ignored (EX #3, #4, and #5, letters between the parties). Plaintiff is seeking an award of damages, a preliminary and permanent injunction against OTG's behavior and a declaration of rights to prevent any further harm by OTG.

4.      This Court has jurisdiction over OTG both as to its corporate existence in New York City and under the above statutes set forth in Paragraph 3.

5.     Venue is proper pursuant to 28 USC § 1391(b) by the substantial acts of OTG emanating from its New York City corporate offices to further their illegal attacks against Plaintiff and the injury caused thereby.

## STATEMENT OF FACTS

6.     Plaintiff is a Delaware Limited Liability Corporation established in 2010 and is qualified in New York. Plaintiff currently operates six THE MEATBALL SHOP restaurants in the metropolitan area of New York City and is in the process of opening a new restaurant in Washington D. C. in the summer of 2018.

7.     Since the first MEATBALL SHOP restaurant opened in 2010 in New York City, THE MEATBALL SHOP restaurants have been very successful and have attracted patrons within the New York City region and outside the New York City. Between 2010 and 2014, Plaintiff expanded its operation continuously and successfully established six THE MEATBALL SHOP restaurants in the NYC metropolitan area.

8.     THE MEATBALL SHOP restaurants are well-known locally and nationally. THE MEATBALL SHOP restaurants, its founders and its Chief Executive Officer have been featured in TV shows on national broadcast and cable television networks ABC, CNBC, and FoodNetwork, among others. THE MEATBALL SHOP restaurants are listed in the national tour guide TripAdvisor as a popular tourist destination. The founders of THE MEATBALL SHOP restaurants appeared on national TV Shows Martha Stewart Living with Martha Stewart and

Barefoot Contessa with Ina Garten. The CEO of Meatball Management has appeared and been interviewed in print and broadcasts.

9. Plaintiff is in the process of opening its seventh restaurant in Washington D.C., as widely reported by Washingtonian Magazine, Eater Washington, and other DC newspapers and magazines. The new restaurant will be located in D.C.'s famous 14th Street corridor.

10. Plaintiff is the owner of four federally registered trademarks of THE MEATBALL SHOP: Reg. Nos. 4895393, 5058440, and 5058611 that are registered on the Principal Register (EX #6 - #8) and Reg. No. 3862272 registered on the Supplemental Register (EX #9).

11. Mark No. 4895393 is a plain word mark for "The MEATBALL SHOP." It is registered on February 2, 2016, under International Class 043 for restaurant services. Plaintiff filed the application that resulted in Registration No. 4895393 on June 29, 2015, claiming use in interstate commerce since at least as early as June 7, 2010,

12. Mark No. 5058440 is a plain word mark for "The MEATBALL SHOP." It is registered on October 11, 2016, under International Class 030 for tomato sauce and pasta sauce. Plaintiff filed the application that resulted in Registration No. 5058440 on February 25, 2016, claiming use in interstate commerce since at least as early as April 1, 2015.

13. Mark No. 5058611 is a design mark featuring "The MEATBALL SHOP" and a picture of a grinder as shown below:

**THE MEATBALL SHOP**
EST 2010

It is registered since October 11, 2016, under International Class 043 for restaurant and bar services. Plaintiff filed the application that resulted in Registration No. 5058611 on February 29, 2016, claiming use in interstate commerce since at least as early as April 1, 2015.

14.     Mark No. 3862272 is a plain word mark for "The MEATBALL SHOP." Plaintiff filed the application that resulted in Registration No. 3862272 on March 10, 2010. The application was rejected by the US Patent and Trademark Office on the ground of "merely descriptive." The mark was approved for registration on the Supplemental Register and was registered on the Supplemental Register on October 12, 2010. After more than five years of continued use in interstate commerce, Plaintiff submitted an application on July 2, 2015 for registration on the Principal Register and submitted a declaration of use in commerce under §8 of the Lanham Act on October 24, 2016.  The application was approved for registration on the Principal Register on February 2, 2015, which resulted in Registration No. 4895393.

15.     Plaintiff has maintained the registrations of all its marks and has spent significant resources to build and protect the goodwill associated with its marks. THE MEATBALL SHOP restaurants have received reviews and news coverage by numerous national magazines and

newspapers (EX 11). The founders of THE MEATBALL SHOP restaurants have also appeared on many well-known food shows (EX 12).

16. On information and belief, Defendant had engaged in discussions with Daniel Holzman, one of the founders of THE MEATBALL SHOP, regarding the possibility of a relationship or collaborative project. No relationship or collaborative project materialized.

17. On information and belief, Defendant has had long term actual knowledge of Plaintiff and its successful usage of its branded THE MEATBALL SHOP restaurants.

18. On information and belief, Defendant operates food and beverage facilities within airports in North America. It operates over 200 restaurants in 23 terminals across 10 airports and employs over 5000 employees. Defendant operates Italian food restaurants in all three NYC airport terminals and serve meatballs in all of them.

19. On March 13, 2018, Plaintiff received a Google Alerts email titled "Meatball shop" (EX #10). The email contains an article from Houston Chronicle reporting the planned opening of restaurant MAGNOLIA MEATBALL SHOP by chef Christopher Williams Of Lucille's in Terminal C-South at Houston's George Bush International Airport. On information and belief, restaurant MAGNOLIA MEATBALL SHOP has opened for business (EX #2).

20. On information and belief, restaurant MAGNOLIA MEATBALL SHOP is managed and operated by Defendant.

21. Mark "MAGNOLIA MEATBALL SHOP" is confusingly similar to Plaintiff's registered marks "The MEATBALL SHOP." The unauthorized use of "MEATBALL SHOP" by Defendant is likely to cause confusion, mistake or deception on the part of consumers, vendors, sponsors and advertisers as to the source, nature and quality of the goods and services of Defendant using the MAGNOLIA MEATBALL SHOP mark, constituting trademark infringement under 15 USC §1114.

22. Defendant's unauthorized use of THE MEATBALL SHOP trademark rights is likely to cause consumers to believe that there is a relationship between Defendant and Plaintiff and its restaurant and related services and merchandise. Such a relationship, inter alia, constitutes a false designation of origin under and in violation of 15 USC §1125(a).

23. Because Defendant has long term actual knowledge of Plaintiff and its successful usage of its branded THE MEATBALL SHOP restaurants, Defendant's marketing activities and promotion of restaurant MAGNOLIA MEATBALL SHOP constitute willful trademark infringement under the Lanham Act and the common law of the State of New York. As a direct and proximate result of Defendant's wrongful conduct Plaintiff has been, is now and will be irreparably injured and damaged by Defendant's aforementioned acts.

24. Because Defendant has long term actual knowledge of Plaintiff and its successful usage of its branded THE MEATBALL SHOP restaurants, OTG's opening of restaurant MAGNOLIA MEATBALL SHOP in Houston's George Bush International Airport constitutes unfair

competition under the Lanham Act and the laws of the State of New York. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been irreparably injured and damaged by OTG's aforementioned acts.

25. On April 24, 2018, Plaintiff's counsel sent a cease and desist letter to Mr. Allen Engelhardt, the executive assistant at OTG Experience, regarding Defendant's infringing use of Plaintiff's registered mark. (EX #3). Plaintiff informed Defendant of the irreparable harm caused by its infringing acts and demanded that Defendant stop using the infringing mark immediately.

26. On April 26, 2018, Plaintiff's counsel received a letter from Defendant's counsel, Mr. Jordan A. LaVine, refusing to comply with Plaintiff's demand that Defendant cease using the infringing mark "MAGNOLIA MEATBALL SHOP." (EX #4).

27. On May 16, 2018, Plaintiff's counsel, Maxim Waldbaum and Letao Qin, and Defendant's counsel Jordan LaVine, held a conference call in an attempt to resolve the dispute. However, Defendant refused to cease its infringing acts and the parties failed to reach an agreement (EX#5).

COUNT 1

TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT (15 USC §1114)

28. Plaintiff repeats and realleges paragraphs 1 through 27 as fully set forth herein.

29.     The acts of OTG described above constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 USC §1114.

30.     Plaintiff has valid and protectable registered trademark rights in its THE MEATBALL SHOP. Registrations 4895393, 5058440, 5058611 and 3862272, dating from use as early as 2010. These uses have been continuous and highly successful since that time. These rights predate OTG's first expected infringing use of MAGNOLIA MEATBALL SHOP as recently announced. Upon information and belief, with over 300 restaurants in 10 airport locations, including the three airports in and around New York City, it is expected that there will be many more of these infringements in the immediate future as OTG has shown willful disregard of the rights of Plaintiff.

31.     Upon information and belief, OTG has had long term actual knowledge of Plaintiff and its successful usage of its branded THE MEATBALL SHOP restaurants.

32.     OTG's unauthorized use of its infringing MAGNOLIA MEATBALL SHOP mark as alleged above is likely to cause confusion, mistake or deception on the part of consumers, vendors, sponsors and advertisers as to the source, nature and quality of the goods and services of OTG using the MAGNOLIA MEATBALL SHOP mark, constituting trademark infringement under 15 USC §1114.

33.     As a direct and proximate result of OTG's wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged by OTG's aforementioned acts. Unless OTG is

enjoined by this Court, Plaintiff will suffer further harm to its brand, reputation and good will. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

34.    On information and belief, OTG has acted willfully to usurp Plaintiff's rights and should be held liable to Plaintiff for treble damages and attorneys; fees pursuant to 15 USC §1117(a).

COUNT 2

FEDERAL UNFAIR COMPETITION UNDER THE LANHAM ACT [15 USC §1125(a)]

35.    Plaintiff repeats and realleges paragraphs 1 through 34 above as fully set forth herein.

36.    The acts of OTG described above constitute unfair methods and acts of unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 USC §1125(a).

37.    OTG's unauthorized use of THE MEATBALL SHOP trademark rights is likely to cause consumers to believe that there is a relationship between OTG and Plaintiff and its restaurant and related services and merchandise. Such a relationship, inter alia, constitutes a false designation of origin under and in violation of 15 USC §1125(a).

38.    As a direct and proximate result of OTG's wrongful conduct Plaintiff has been, is now and will be irreparably injured and damaged by OTG's aforementioned activities, and unless

OTG is enjoined by this Court, Plaintiff will suffer further harm to its name, brand, reputation and good will. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

39. On information and belief OTG has acted willfully to usurp Plaintiff's rights with full knowledge and intent to cause harm to Plaintiff and OTG should be held liable to Plaintiff for treble damages and attorneys' fees pursuant to 15 USC §1117(a).

## COUNT 3

### NEW YORK COMMON LAW TRADEMARK INFRINGEMENT

40. Plaintiff repeats and realleges Paragraph's 1 through 39 above as fully set forth herein.

41. The acts of OTG constitute willful trademark infringement under the common law of the State of New York.

42. As a direct and proximate result of OTG's wrongful conduct Plaintiff has been, is now and will be irreparably injured and damaged by OTG's aforementioned acts, and less OTG is enjoined by this Court, Plaintiff will suffer further harm to its brand, name, reputation and good will. This harm constitutes an injury for which there is no adequate remedy at law.

## COUNT 4

### UNFAIR COMPETITION UNDER NEW YORK COMMOM LAW

43. Plaintiff repeats and realleges Paragraphs 1 through 42 above as fully set forth herein.

11

44. The acts of OTG above constitute unfair competition under the laws of the State of New York.

45. As a direct and proximate result of OTG's wrongful conduct, Plaintiff has been irreparably injured and damaged by OTG's aforementioned acts, and unless this Court enjoins OTG, Plaintiff will suffer further harm to its brand, name, reputation and good will. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

COUNT 5

TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS
AND PROSPECTIVE ADVANTAGE

46. Plaintiff repeats and realleges Paragraphs 1 through 45 above as fully set forth herein.

47. Upon information and belief OTG knew or should have known that there was/is contractual relationship between Plaintiff and its vendors, suppliers and advertisers.

48. Upon information and belief by pressing forward with wrongful acts of openly and aggressively taking the brand, reputation and good will of Plaintiff, OTG has effectively interfered with the contracts with Plaintiff's vendors, suppliers and advertisers and intend to continue such acts.

49. OTG was and is not a party to any of these obligations/contracts.

50. OTG's interference was/is calculated, intended and malicious without justification.

51. OTG has openly and actually shown unmitigated hostility to and interference with Plaintiff's new opportunities and the potential advantages to be gained from such new relationships. Such interference was and continues to be inflicted without any care as to the consequences of such illegal acts, that is, intentionally, by OTG, who has no rightful interest in any of Plaintiff's opportunities as OTG attempts to destroy those opportunities. There is no justification in trying to harm Plaintiff in trying to further develop its brand, reputation and good will.

52. Irreparable and continuing damage has occurred and will continue to occur showing the unlimited malice of OTG.

53. The acts of OTG have caused and will continue to cause substantial damage including loss of income and business opportunities to Plaintiff. Such damage will cause irreparable harm if not enjoined by this Court. Plaintiff has no adequate remedy at law for these acts.

COUNT 6

DECLARATORY RELIEF UNDER 28 USC §§ 2201-2202

54. Plaintiff repeats and realleges Paragraphs 1 through 53 above as fully set forth herein.

55. This is a claim for a declaration that:

   a. Plaintiff has substantial and continuing intellectual property rights associated with its well-known brand THE MEATBALL SHOP for restaurant services and related services and goods.

   b. OTG has wrongfully encroached on those rights, having done so willfully and intentionally.

   c. That Plaintiff has the absolute right to stop OTG from harming those rights now and in the future.

   d. OTG has no right to claim any legal support to take for itself any of skill, good will and reputation associated with THE MEATBALL SHOP brand owned by Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment as follows:

As for all Claims that a judgment in favor of Plaintiff be entered and against OTG as follows:

1. That Plaintiff be awarded damages in an amount to be determined for the acts of trademark infringement and unfair competition and a further amount for damage to Plaintiff's reputation by reason of the willful acts of OTG.

2. That Plaintiff be awarded exemplary damages for the willful conduct exhibited by OTG against Plaintiff, including 3(three) times the damages so proven by Plaintiff under The Lanham Act.

3. That a preliminary and permanent injunction be granted against OTG, including against acts of infringement and any fraudulent, malicious, misleading or deceptive statements to any third party, to prevent any further damage to Plaintiff.

4. That this Court declare the substantial rights of Plaintiff as above set forth and that the actions and activities of OTG are infringements that must be stopped.

5. Awarding Plaintiff its costs of this action, including reasonable attorneys' fees and other disbursements.

6. Awarding Plaintiff pre-judgment and post-judgment interest on any monetary award.

7. Granting Plaintiff any other and further relief as the Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

PURSUANT TO RULE 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues raised by the Complaint.

Dated May 18, 2018                                        RIMON, P.C.


                                                          By: <u>/s/Maxim H. Waldbaum</u>
                                                              Maxim H. Waldbaum (MW-4615)
                                                              Attorney(s) for Plaintiff